IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JUDITH G. JANIS and JONATHAN N.
JANIS, as Co-Personal Representatives
for the ESTATE OF THOMAS J. JANIS

    Plaintiffs,

vs.                                     CASE NO.: 6:04-cv-184-ORL-18DAB

PRATT & WHITNEY CANADA, INC.,
a foreign corporation;

    Defendants.

                                                Consolidated Case
_____

SONIA ZORAIDA CONTRERAS VARGAS,
as Personal Representative for the ESTATE
OF LUIS ALCIDES CRUZ,

    Plaintiffs,

vs.                                     CASE NO.:6:04-cv-1359-ORL-18KRS

PRATT & WHITNEY CANADA, INC.,
a foreign corporation;

_____/

ORDER

THIS CAUSE comes before the Court on motions for summary judgment by Defendant Pratt & Whitney Canda, Corp. ("Pratt & Whitney") in consolidated Case No. 04-cv-184 (Doc. 64, filed April 19, 2005) and Case No. 04-cv-1359 (Doc. 36, filed April 19, 2005),[1] to which Plaintiffs Judith G. Janis and Jonathan N. Janis, as personal representatives for the estate of

---

[1] The latter motion adopts all arguments and authorities set forth in the motion for summary judgment in Case No. 04-cv-184.

Thomas J. Janis, and Sonia Zoraida Contreras Vargas, as personal representative for the estate of Luis Alcides Cruz, (collectively, "Plaintiffs") have jointly responded in opposition (Case No. 04-cv-184, Docs. 75-79, filed May 7, 2005).

## I. BACKGROUND

Thomas Janis ("Janis"), a retired Army pilot, flew civilian surveillance and reconnaissance missions in Colombia. Janis's aircraft was equipped with a Pratt & Whitney PT6 turbine engine. On a February 13, 2002 flight, the aircraft's turbine engine allegedly stopped running because the compressor turbine blades fractured due to "creep," a metallurgical aging process. Janis piloted the plane to a crash landing on a mountainous ridgeline near Florencia, Colombia. Luis Alcides Cruz ("Cruz"), a Colombian military advisor, was a passenger on the plane and suffered a broken pelvis in the accident. Although Janis and Cruz both survived the crash, they were shot and killed near the crash site by members of the Colombian rebel group, Revolutionary Armed Forces of Colombia (FARC). (Doc. 75, Ex. 18.) Plaintiffs bring causes of action against the engine manufacturer, Pratt &Whitney, for negligence and strict liability.

## II. DISCUSSION

### A. Summary Judgment

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see e.g., Stachel v. City of Cape Canaveral, 51 F. Supp. 2d 1326, 1329 (M.D. Fla. 1999). Material facts are those that may affect the outcome of the

2

case under the applicable substantive law. Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of proving that no genuine issue of material fact exists. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324-25 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. <u>Matsushita Elec. Ind. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986). The moving party may rely solely on his pleadings to satisfy its burden. <u>Celotex</u>, 477 U.S. at 323-24. A non-moving party bearing the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories or admissions that designate specific facts indicating there is a genuine issue for trial. <u>Id.</u> at 324. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. <u>Anderson</u>, 477 U.S. at 249-50. Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case. <u>Celotex</u>, 477 U.S. at 322.

### B. Negligence

Federal courts sitting in diversity apply the substantive law of the forum state. <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938); <u>Esfeld v. Costa Crociere, S.P.A.</u>, 289 F.3d 1300, 1306 (11th Cir. 2002). Under Florida law, a plaintiff must prove four elements to prevail on a negligence claim: (1) the defendant owes a legal duty to the plaintiff; (2) the defendant breached that duty; (3) defendant's breach legally caused an injury to plaintiff; and (4) damages

AO 72A
(Rev.8/82)

resulted from the injury. Sexton v. U.S., 132 F. Supp. 2d 967, 974 (M.D. Fla. 2000); Clampitt v. D.J. Spencer Sales, 786 So. 2d 570, 573 (Fla. 2001). The element of "legal cause" consists of cause-in-fact and proximate cause. Id. The parties in the instant case do not currently dispute breach, cause-in-fact, or damages. Pratt &Whitney does strenuously contest whether, under Florida law, it owed a duty to the decedents and if so, whether the breach of that duty was the proximate cause of their death.

The question posed by the unique facts of the case -- whether an airplane engine manufacturer may be liable for criminal conduct occurring at the site of an alleged product failure -- is a matter of first impression under Florida law. Two other state courts confronting a similar issue have declined to impose liability on the product manufacturer on proximate cause grounds, finding that the criminal conduct constituted an efficient intervening cause. See Stahlecker v. Ford Motor Co., 667 N.W.2d 244 (Neb. 2003) (affirming demurrer in favor of car manufacturer where plaintiff was abducted, raped, and murdered after being stranded on the road following a tire malfunction); Kleen v. Homak Mfg. Co., Inc., 749 N.E.2d 26 (Ill. 1st DCA 2001) (affirming dismissal of action against manufacturer and retailer of firearm safe where child broke into allegedly defective safe, stole gun, and committed suicide).

*1. Duty vs. Proximate Cause*

The Florida Supreme Court has noted that although questions pertaining to the existence of duty and proximate cause both entail a "foreseeability" analysis, they are to be analyzed separately. McCain v. Fla. Power Corp., 593 So. 2d 500, 502 (Fla. 1992). As cogently explained by the Florida Supreme Court in McCain:

4

> The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader "zone of risk" that poses a general threat of harm to others. The proximate causation element, on the other hand, is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred. In other words, the former is a minimal threshold *legal* requirement for opening the courthouse doors, whereas the latter is part of the much more specific *factual* requirement that must be proved to win the case once the courthouse doors are open. As is obvious, a defendant might be under a legal duty of care to a specific plaintiff, but still not be liable for negligence because proximate causation cannot be proven. Id. at 502-03 (citations omitted).

With these differences in mind, the Court proceeds to the question of whether Pratt & Whitney's conduct "foreseeably created a broader 'zone of risk' that poses a general threat of harm to others."

### 2. Duty

Duty is a matter of law that is to be determined by the Court. Id. at 502. A legal duty may arise from legislation, case law, or the general facts of the case. Id. at 503 n.2. It is well-established that a product manufacturer has "a duty to exercise reasonable care so that their products in the marketplace will not harm persons or property. Cintron v. Osmose Wood Preserving, Inc., 681 So. 2d 859, 861-62 (Fla. 5th DCA 1996). An engine malfunction in an airborne plane necessarily involves a greater risk of harm than other product defects, and as noted by the court in McCain, the defendant's duty increases as the plaintiff's risk increases:

> While it is true that power companies are not insurers, they nevertheless must shoulder a greater-than-usual duty of care in proportion to the greater-than-usual zone of risk associated with the business enterprise they have undertaken. Electricity has unquestioned power to kill or maim. This is the precise reason the duty imposed upon power companies is a heavy one, because the risk defines the duty. Thus, if there is any general and foreseeable risk of injury through the transmission of electricity, the courts are not free to relieve the

power company of this duty. McCain, 593 So. 2d at 504 (citations omitted). Similarly, a malfunctioning airplane engine has a high probability of killing numerous people or placing them in perilous situations should a landing fortuitously occur: they may be subjected to inhospitable terrain, open sea, unfavorable climate conditions, or dangerous animals or persons. A death caused-in-fact by a mid-air engine malfunction, as is allegedly the case here, surely falls into the "broader zone of risk." To the extent there is an issue about the propriety of imposing liability for the "specific injury that actually occurred," this issue is properly addressed under principles of proximate cause. See McCain, 593 So. 2d at 502; Moffat v. U.S. Foundry & Mfg. Corp., 551 So. 2d 592, 593 (Fla. 2d DCA 1989) (where child on bicycle was trying to avoid grate in road and was hit by passing car, court found "[t]he fact that the grate did not actively cause the child's injuries may ultimately prove significant in determining the issue of causation. Nevertheless, we perceive no reason to limit the duty owed in negligence or strict liability by an active/passive distinction which has not proven to be a manageable distinction in the past.").

Defendant relies on well-established precedent stating that parties have no legal duty to prevent the misconduct of third persons, unless there is a "special relation" between the defendant and the third party or the defendant and the victim. See Aguila v. Hilton, Inc., 878 So. 2d 392, 399 (Fla. 1st DCA 2004) (citing Restatement (Second) of Torts § 315 (1965)). Plaintiffs do not argue that Pratt & Whitney had a special relation to the third party Colombian hostile forces necessitating a duty to control them.[2] Rather, the issue is whether Pratt

---

[2] A duty to control a third person's conduct is commonly found between parents and children, masters and servants, and possessors of land or chattels and licensees. K.M. ex rel. D.M. v. Publix Super Markets, Inc., 895 So. 2d 1114, 1117 (Fla. 4th DCA 2005); see also Restatement (Second) of Torts §§ 316-318 (1965).

6

& Whitney had a special relation to Janis and Cruz. Florida courts have recognized special relationships in a variety of contexts: employer-employee, landlord-tenant, landowner-invitee, and school-minor. See Gross v. Family Serv. Agency, Inc., 716 So. 2d 337, 338-39 (Fla. 4th DCA 1998) (footnotes omitted). The recognized special relationships continue to evolve. See id. (extending "special relation" duty to university-adult student). In fact, the Third District Court of Appeals extended the special relationship doctrine to rental agency-customer, holding that a defendant car rental company had a duty to warn the plaintiff tourist of foreseeable criminal conduct directed at tourists in rental cars, in light of the defendant's "superior knowledge" of possible criminal conduct. See Shurben v. Dollar Rent-A-Car, 676 So. 2d 467, 468 (Fla. 3d DCA 1996); K.M. ex rel. D.M. v. Publix Super Markets, Inc., 895 So. 2d 1114, 1118 (Fla. 4th DCA 2005) (clarifying that Shurben recognized a rental agency-customer "special relation"). As the Restatement itself notes, the special relations "are not intended to be exclusive, and are not necessarily the only ones in which a duty of affirmative action for the aid or protection of another may be found." Restatement (Second) of Torts § 314A cmt. (1965).

In the absence of any controlling Florida precedent, the Court finds that Pratt & Whitney, as an airplane engine manufacturer, owed the instant decedents a duty of care to prevent the general harm of injury and death occurring at the site of an unplanned landing allegedly caused by a defective engine.[3] To the extent Florida courts find a defendant's

---

[3] Cf. Stahlecker, 667 N.W.2d 244. In this case addressing an analogous situation, the Nebraska Supreme Court appeared to find that the product manufacturer had a general duty to the plaintiff. Id. at 253. In its proximate cause analysis, however, the court found that the parties did not have the requisite special relationship and that the criminal conduct constituted an efficient, intervening cause. Id. at 256-57. As discussed later in this opinion, this finding was at least partially based on defendant's lack of specific knowledge regarding criminal activity -- which is contested here as discussed below -- and on the "active/passive" distinction that Florida courts have apparently abandoned, as noted above. See Moffat, 551 So. 2d at 593.
     The other court to confront a similar issue specifically stated that it was only addressing proximate cause, not the other elements of negligence. See Kleen, 749 N.E.2d at 29.

7

knowledge of dangerous conditions relevant, as in Shurben, there is an issue of fact as to the extent of Pratt & Whitney's knowledge, which is discussed in detail below.

### 3. *Proximate Cause*

Under Florida law, the question of foreseeability must be left to the fact-finder to resolve where reasonable persons could differ as to "whether the *specific* injury was genuinely foreseeable or merely an improbable freak." McCain, 593 So. 2d at 504 (emphasis in original). On the other hand, a trial court has discretion to remove the issue from the jury if, "'after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that [the conduct] should have brought about the harm.'" Id. (quoting Restatement (Second) of Torts § 435(2) (1965). The Florida Supreme Court has expressly condoned deciding such cases as a matter of law on a motion for summary judgment when there is an active and efficient intervening cause upon which reasonable people cannot differ. Dep't of Transp. v. Anglin, 502 So. 2d 896, 899 (Fla. 1987).

As mentioned above, at least two state supreme courts have found that where a product defect provides the occasion for a third party's criminal behavior, the intervening criminal act prohibits a finding of proximate cause. Stahlecker, 667 N.W.2d at 256; Kleen, 749 N.E.2d at 31. In its reasoning in Stahlecker, the Nebraska Supreme Court stated:

> Assuming the truth of these allegations,[4] the most that can be inferred is that Ford and Firestone had general knowledge that criminal assaults can occur at the scene of a vehicular product failure. However, it is generally known that violent

---

[4] The Stahlecker plaintiffs alleged that: Ford and Firestone knew or should have known of "the potential for similar dangerous situations arising as a result of a breakdown of a Ford Explorer and/or its tires resulting in danger to its consumers and users from criminal activity, adverse weather conditions, inability to communicate with others or any combination thereof." They also alleged that Ford and Firestone had or should have had "knowledge, to include statistical information, regarding the likelihood of criminal conduct and/or sexual assault against auto and tire industry consumers as a result of unexpected auto and/or tire failures in general." Stahlecker, 667 N.W.2d at 257.

8

> crime can and does occur in a variety of settings, including the relative safety of a victim's home. The facts alleged do not present the type of knowledge concerning a specific individual's criminal propensity, or right of control over premises known to have been the scene of prior criminal activity, upon which we have recognized a tort duty to protect another from criminal acts.
>
> Stahlecker, 667 N.W.2d at 257.

In the instant case, however, Plaintiffs have introduced evidence from which a reasonable inference may be made that Pratt & Whitney had knowledge of a possible criminal attack by Colombian hostile forces: A previous engine in Janis's plane failed on June 11, 2001, resulting in his first unplanned landing. During the inspection of this engine, Ronnie Powers, owner of the company leasing the plane to Air Quest, Inc., Janis's employers, informed a Pratt & Whitney representative, Paul Crosby, that missions were being flown over hostile territory in Colombia. (Powers Aff. ¶ 4.) Richard Pere, owner of Air Quest, Inc., also states that he discussed these facts with Crosby at the inspection. (Pere Aff. ¶ 7.) When the replacement engine went in for inspection, Powers told another Pratt & Whitney representative, Andre Spits, that the plane was performing surveillance missions over hostile areas in Colombia. (Id. at ¶ 6.) Finally, in a letter to Janis, Tom Childrey, President of Air Quest, Inc., stated that "PWC has no volunteers as of this morning to travel to Colombia, they are working thru their facility in Brazil." (Doc. 75, Ex. 7.) Plaintiffs contend that this last comment shows Pratt & Whitney's avoidance of dangerous conditions in Colombia, and that all the evidence, taken together, establishes a factual question as to whether Pratt & Whitney had knowledge with respect to the possibility of criminal attack by the Colombian hostile forces.

This evidence falls in the continuum of Florida cases finding that the defendant had adequate knowledge of previous instances of criminal activity and those that found the third

party's criminal conduct was an aberration for which a defendant could not be held liable.[5] The Court accordingly finds that reasonable minds could differ as to whether the specific injuries sustained by Janis and Cruz were genuinely foreseeable or merely an improbable freak occurrence. See Vining v. Avis Rent-A-Car Sys., Inc., 354 So. 2d 54 (Fla. 1977) (finding that complaint presented jury question about whether car rental agency leaving keys in ignition of its car in high-crime area was proximate cause of damage resulting from collision between thief and plaintiffs). Defendant's motion for summary judgment on Plaintiffs' negligence claim is therefore denied.

### C.  Products Liability

To sustain an action for products liability under Florida law, a plaintiff must prove, by a preponderance of the evidence, that: (1) a product; (2) produced by a manufacturer; (3) was defective or created an unreasonably dangerous condition; (4) that proximately caused; (5) injury. Edward M. Chadbourne, Inc. v. Vaughn, 491 So. 2d 551, 553 (Fla. 1986). Because there is a jury question regarding proximate cause, for the reasons discussed above, the Court denies Defendant's motion for summary judgment on Plaintiffs' products liability claim.

---

[5] See Orlando Executive Park, Inc. v. Robbins, 433 So. 2d 491 (Fla. 1983), *receded from on other grounds*, Mobil Oil Corp. v. Bransford, 648 So. 2d 119 (Fla. 1995) (evidence that management had knowledge of numerous episodes of criminal activity occurring during immediately preceding six-month period, and that situation required presence of security guards, supported jury verdict holding motel owner liable for attack upon guest by unidentified man); Drake v. Sun Bank and Trust Co. of St. Petersburg, 400 So. 2d 569, 570 (Fla. App. 1981) (finding wife of murdered bank customer had stated a cause of action by alleging that bank was in a high crime area and provided less protection than other banks, that similar crimes occurred on or near the facilities, and that bank should have had knowledge of the chance of an assault against a customer on their property); cf. Roberts v. Shop & Go, Inc., 502 So. 2d 915, 917 (Fla. 2d DCA 1986) (declining to find liability for vendor that sold customer gasoline in a pail that customer used to douse customers and set them on fire because acts were wholly unforeseeable and constituted an efficient intervening cause as a matter of law); Barnes v. Gulf Power Co., 517 So. 2d 717, 718 (Fla. 1st DCA 1987) (finding criminal attack on telephone repairmen was efficient intervening cause, where Gulf Power was allegedly negligent in maintaining its electrical lines and in misrepresenting that it would send out repairmen to repair the lines, thereby delaying the telephone repair job until after darkness fell).

## III. CONCLUSION

The Court finds that the undisputed facts and the reasonable inferences drawn therefrom establish genuine issues of material fact that would justify bringing this lawsuit to trial. Based on the foregoing discussion and upon careful consideration of the record and all relevant law, it is **ORDERED** and **ADJUDGED** as follows:

(1) Defendant Pratt & Whitney's motion for summary judgment in Case No. 04-cv-184 (Doc. 64) is **DENIED**;

(2) Defendant Pratt & Whitney's motion for summary judgment in Case No. 04-cv-1359 (Doc. 36) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida this 1st day of June, 2005.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

11